Welles, J.
 

 If the consideration of the bond and mortgage in question was a loan from the appellants to the respondents, and the transaction is to be treated in that light, it cannot be legally upheld, for two reasons:
 

 I. Seventy-five per cent, of the amount of the loan of $3000, for which the bond and mortgage were given, consisted in a trust certificate issued by the company, by *which they certified that the sum of $2250 had been deposited with them for the period of twenty *- years, and irredeemable within that time; interest to be
 
 *367
 
 paid thereon by the company half-yearly at the rate of 4J per cent, per annum, and the principal to be paid at the end of the twenty years.
 

 The revised statutes declare, that no corporation, created or to be created, and not expressly incorporated for banking purposes, shall, by implication or construction, be deemed to possess the power of discounting bills, notes or other evidences of debt, &c., or of issuing bills, notes
 
 or other evidences of debt,
 
 &c.,
 
 upon loan,
 
 or for circulation as money. (1 R. S. 600, § 4.) And the 21st section of the act incorporating the New York Life Insurance and Trust Company provides, that the said company shall not, in any case, or for any purpose, issue its own bills, notes or
 
 other evidences of debt, for loan,
 
 or for circulation as money. (Laws of 1830, p. 80, c. 75, § 21.)- The certificate in question was clearly an evidence of debt; by it, the company bound themselves to pay interest semiannually, and at the end of twenty years, to pay the principal. If it was issued on a loan, it was manifestly in violation of both the statutes referred to.
 

 II. Assuming the right of the company to loan their certificates of deposit, and the transaction a loan, it was illegal and void for usury. The bond and mortgage bore interest at seven per cent, and the certificate only 4-|-per cent., making a difference in favor of the company of 2-|- per cent., or $57.25 per year, on the amount of the certificate. It is not doubted, that if the certificate were actually worth in money its nominal amount, at the time it was loaned, notwithstanding it bore a rate of interest less than the respondents agreed to pay for the forbearance of the amount, the transaction would have been exempt from the imputation of usury. But this was not attempted to be proved; on the contrary, there is evidence in the case, which is uncontradicted, showing that the certificate was not intrinsically worth and would not sell in market for its nominal or par value, which was known to the appellants. It is proved, that they were
 
 *368
 
 in the habit of purchasing similar ^certificates ^ issued by themselves, at a discount. If they were loaned as money, at their nominal amount, according to a well-settled principle, it was usury.
 
 (Farmers’ Loan & Trust Co.
 
 v. Carroll, 5 Barb. 654, and authorities there cited;
 
 Eagleson
 
 v.
 
 Shotwell,
 
 1 Johns. Ch. 536;
 
 Bank United States
 
 v.
 
 Owen,
 
 2 Peters 527;
 
 Dry Dock Bank
 
 v.
 
 American Life Ins. & Trust Co.,
 
 3 N. Y. 344.)
 
 [1]
 
 There can be no doubt, from the evidence, that the bond and mortgage were given by the respondents, and intended by them, as security for a loan, nor that they received the proceeds thereof as a loan from the appellants; this was scarcely denied upon the argument. It was, in point of fact, a loan and nothing else.-
 

 But it is contended on behalf of the appellants, that the respondents are estopped from alleging that the transaction was a loan. That the bond and mortgage were sold to them by Schermerhorn, as his own property, under representations made by him, at the time, that they had been given to secure a debt due from the respondents to him, and that it was part and parcel of the arrangement entered into between the appellants and Schermerhorn, detailed in the evidence, by which the latter was to sell , bonds and mortgages to a large amount to the former, and receive in payment the trust certificates of the company.
 

 It cannot bo pretended, that there is any evidence to show that the respondents knew of the alleged repre^ sentations of Schermerhorn, or that they ever authorized him to make them, or to pass off the bond and mortgage as his own property. Schermerhorn swears that he was the agent of the respondents in procuring this loan for them; and the counsel for the appellants contends, that the respondents are concluded by his acts and representations, the same as if they were their own, upon the principle which pervades all cases of agency, that the principal is bound by all acts of his agent, within the scope of his agency, which he holds him out to the world to possess; and that where the acts of the agent will bind the principal, there his representations, * 369 1 declarations and admissions respecting the *sub--
 
 [1]
 
 ject-matter will also bind him, if made at the same time and constituting part of the
 
 res gestx.
 

 The declarations or representations of the agent, when not expressly authorized by the principal, must, in order to bind him, be within the scope of his agency; but that was not the case here. Schermerhorn’s agency was to obtain a loan for the respondents from the appellants; his alleged declarations, which are relied upon, were entirely without the scope of such or any other agency. Instead of acting as the respondents’ agent, he represented himself as acting in his own name and right, and on his own. account; in effect, denying any agency whatever; and on that ground solely, the appellants allege they dealt with him. Under such circumstances, it is impossible to perceive, how a rule can be applied which relates to the liability of an individual, in consequence of the acts or declarations of his agent.
 
 [2]
 

 The natural inference from the fact, that the bond and mortgage were drawn directly to the appellants was, that the transaction was between them and the respondents, and such is the aspect presented by the bill of complaint, and it is inconsistent with the idea that they were given for a debt due to Schermerhorn; and if the appellants have listened to a totally different and unauthorized statement of facts made by him, and have acted upon it, they did so at their peril, and must abide the consequences. (Story on Agency, § 78; 5 Ves. 211; 7 Wend. 446.) The judgment of the supreme court should be affirmed.
 

 Judgment affirmed.
 

 [1]
 

 Quackenbos
 
 v.
 
 Sayer, 62 N. Y. 344.
 

 [2]
 

 See Talmage
 
 v.
 
 Nevins, 2 Sweeny 46.