has a right of action to recover for the loss of service, and the sum expended in the cure of the wife or child. In the case cited the defendant's duty was a negative one, while in the case at bar the defendant owed a positive duty to its citizens so to construct and maintain its sewers as to promote, and not destroy, the health of its citizens. In this respect the two cases are unlike. Nevertheless, it seems to me that the case cited controls the one now before the court, and, without discussing the principles underlying this case, that it is our duty to hold that Ellen Hughes would have had no right of action had she recovered from her sickness, and consequently her representative has none. The plaintiff's motion for a new trial should be denied, and a judgment ordered in favor of the defendant on the verdict, with costs.

---

(20 App. Div. 557.)

MORRIS et al. v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

EVIDENCE—DECLARATIONS OF AGENT.
    The principle that the declarations of an agent are only admissible against his principal when made as a part of a transaction undertaken in behalf of the principal, or in performance of the duties of his agency, excludes declarations made after the agency has ceased, though derived from memoranda made while it still existed.

Appeal from Kings county court.

Action by Samuel D. Morris and Samuel S. Whitehouse against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiffs, rendered on a verdict, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Jesse Johnson, for appellant.
Morris & Whitehouse, in pro. per.

PER CURIAM. In this action the plaintiffs, who are attorneys and counselors at law, have recovered $800 from the defendant for professional services rendered to that corporation in negotiating and bringing about the compromise and settlement of a number of litigations. The defendant does not deny that the services were performed, nor make any question as to their value; but on the present appeal it insists that errors were committed in the admission of evidence which demand a reversal of the judgment. In the spring of 1896, when the plaintiffs ceased to be the attorneys of the defendant corporation, their claims against the company were adjusted largely through the instrumentality of Mr. Daniel F. Lewis, who was then in the employ of the corporation in an advisory capacity, and Mr. Charles A. Collin, one of its new counsel. Their negotiations were carried on principally with Mr. Whitehouse, one of the plaintiffs, and resulted in an adjustment under which the plaintiffs received a large sum of money. According to all the persons who directly participated in this adjustment, some agreement was made on the part of

the plaintiffs in respect to such services as they might thereafter render in regard to the settlement of suits then pending.   As Mr. Lewis and Mr. Whitehouse remember this agreement, it was that the plaintiffs should be paid a reasonable compensation for such services. According to Mr. Collin's recollection, however, the arrangement did not contemplate any additional payment for what might subsequently be done by the plaintiffs in settling litigations.   The substantial question at issue between the parties in the present action, therefore, was whether the plaintiffs' future services in the settlement of suits were paid for by the lump sum which they received in the adjustment of their large account, or whether such services were to be the subject of separate compensation.   Upon this issue it was, of course, competent to show by the testimony of Messrs. Whitehouse, Lewis, and Collin just what happened, according to their recollection, at the time of the adjustment of the large account, which seems to have been finally concluded on April 4, 1896.   The plaintiffs' present claim for additional compensation became the subject of controversy about July, 1896, and, there being a difference of recollection between Mr. Whitehouse and Mr. Collin as to what had occurred in April, these gentlemen went to the office of Mr. Lewis, and conferred with him in respect to the terms of the original adjustment.   On the trial of the present action Mr. Collin was called by the plaintiffs as a witness in their behalf, and was examined in respect to this July interview. Being questioned in regard to what happened upon that occasion, he testified that Mr. Whitehouse told Mr. Lewis that he and the witness differed in their recollection of the terms of the settlement as to the services that were to be rendered by Morris & Whitehouse after the adjustment of April 4th, and that they would like to have him give his statement of the terms of that settlement, as he remembered them.   The witness then went on to say that Mr. Lewis produced a memorandum, stating that he had made it at the time, and proceeded to read from it.   This memorandum thus read specified what the plaintiffs were to be paid for certain cases on appeal which they were to argue, and furthermore recited that for the services which the plaintiffs should perform in regard to the settlement of cases they were to be paid a reasonable value.   Mr. Collin testified also that he told Mr. Lewis that his recollection was that there was to be no charge for settling any case, but that the charge for future services was to be only where cases were argued by the plaintiffs in the appellate division.   Mr. Whitehouse said to Mr. Lewis that his construction was substantially the same as that shown by the memorandum, whereupon Mr. Collin said that he would hardly expect to set up his memory against the memorandum of Mr. Lewis, but that was his recollection.   As we understand the objection and exception at folio 53 of the appeal book, they are broad enough to apply to all this evidence; and, if so, we think its reception was error, for which the judgment must be reversed.   At the time that Mr. Lewis was thus reading from his memorandum,—his own version of what took place between him and one of the plaintiffs several months before,—he was not acting in the discharge of any duty in behalf of the defendant corporation in respect to the settlement of

the plaintiffs' claim.     We can see no theory upon which this testimony was received as to the contents of this memorandum, unless it be that the reading of it was an admission or declaration by an agent of the corporation, which was made under such circumstances as to be binding upon it.     But it was not thus made.     There is not a word in the record to indicate that at the time of this July interview, at which the contents of the memorandum were read, Mr. Lewis was even assuming to act for the Brooklyn Heights Railroad Company in reference to the plaintiffs' claim.     He was not engaged in any transaction on the part of the company, nor was he employed in any agency in its behalf which made his declarations admissible against the defendant.     Manhattan Life Ins. Co. v. Forty-Second & G. St. Ferry R. Co., 139 N. Y. 146, 151, 34 N. E. 776.

Judgment reversed, and new trial granted; costs to abide the event.